NEW ERA LIFE ASS'N v. SCHEMPF.

1. INSURANCE—MUTUAL BENEFIT ASSOCIATIONS—FRAUD—APPLICA-
TION.
    In suit by mutual benefit association to cancel insurance policy
    on ground of fraud in application, finding of trial court that
    answers regarding insured's health, admittedly false, were
    written in by agent after insured signed application, *held,* not
    justified by evidence.

2. SAME—INCONTESTABLE CLAUSE NOT APPLICABLE TO MUTUAL BENE-
FIT ASSOCIATIONS.
    3 Comp. Laws 1929, § 12427, requiring incontestable clause in
    insurance contracts, does not apply to fraternal mutual benefit
    associations; they being exempt under section 12479.

3. SAME—INCONTESTABLE CLAUSE INOPERATIVE IN CASE OF FRAUD.
    Fraud in application for policy in mutual benefit association ren-
    dered incontestable clause in policy inoperative under its terms.

Appeal from Jackson; Simpson (John), J. Sub-
mitted January 20, 1932. (Docket No. 213, Calendar
No. 36,162.) Decided April 4, 1932.

Bill by New Era Life Association, a fraternal in-
surance association, against Charles L. Schempf to
cancel a death benefit certificate and enjoin action at
law. Cross-bill by defendant for payment of amount
in policy. Decree for defendant. Plaintiff appeals.
Reversed.

*Whiting, Kleinstiver & Aubrey* and *Dale Souter,*
for plaintiff.

*F. L. Blackman,* for defendant.

McDONALD, J. The plaintiff filed this bill to can-
cel a death benefit certificate issued to Carrie L.

As to validity and application of incontestable clause in case
of fraud, see annotation in L. R. A. 1917E, 338.

Schempf, mother of the defendant, who is the sole beneficiary, and to restrain an action at law thereon. The defendant answered and filed a cross-bill in which he asked for a decree requiring payment to him of the amount named in the policy. On the hearing, the relief prayed for in the cross-bill was granted, and the plaintiff's bill was dismissed. From the decree entered the plaintiff has appealed.

The bill charges fraud by the insured in her application for the policy. It alleges that she made false answers to certain material questions as to her health; that she falsely represented she had not suffered any serious illness in the five years preceding the date of her application; that she' had no illness within a year preceding that time; that she did not then have and never had cancer; that she had no disease of the uterus or its appendages; and that she had fully recovered from any disease she ever had.

The defendant admits that if the insured answered the questions as claimed by the plaintiff, they were false; but he asserts she did not answer them; that the answers were filled in by the plaintiff's agent after the insured signed the application. On the hearing, the trial court found the facts to be as stated by the defendant, and made a decree accordingly.

The principal question involved is whether the answers to the. questions in the application in regard to the health of the insured were actually made by her or filled in by the plaintiff's agent after the application was signed.

In his brief the defendant says:

"If they were so made by her as claimed by the company, then the policy should be canceled, except that the same contained an incontestability clause."

Mrs. Bilsborrow was the agent who took the application. She testified that, in response to a telephone call, she went to the home of Mrs. Schempf to take her application for insurance; that she asked Mrs. Schempf every one of the questions contained in the application; that they were answered and the answers written by her just as Mrs. Schempf gave them; that when the application was completed Mrs. Schempf looked it over and signed it; that they then went to the office of Dr. Stewart for examination, where she again examined the application and assented to it as correct.

The testimony on the other side of this issue came from the defendant, Charles L. Schempf. He testified that he was present when the application was made and signed by his mother.

"*Q*. At the time your mother signed that, were there any questions and any answers written in there in regard to any past sickness and her condition of health at that time?

"*A*. No sir.

"*Q*. Was there any question asked by Mrs. Bilsborrow about your mother's previous condition of health or any sickness that she might have had or whether or not she had ever been operated upon or whether or not she had ever been in the hospital?

"*A*. There was not. Mrs. Bilsborrow was there possibly I should say maybe about eight minutes or ten minutes, possibly. My mother and I were coming down town; we were in a hurry to get down town to go to the bank before three o'clock.

"*Q*. Now what, if any, questions did Mrs. Bilsborrow ask your mother?

"*A*. The only questions I heard her ask her was about her own folks, her father and mother and her sisters and brothers.

"*Q*. Were you there in the room all the time that Mrs. Bilsborrow was there?

"*A.* I was standing at least two feet away from them all dressed waiting to go down town. The paper my mother signed on the library table in the living room. I was standing over at the fireplace at the time it was signed.

"*Q.* You saw her sign it?

"*A.* I certainly did.

"*Q.* Did you see Mrs. Bilsborrow when she filled in part of it?

"*A.* Yes, I seen her when she filled in part of this. She filled in part of it and she told my mother to sign; if she was in a hurry, she could fill in the rest of it. * * * Mrs. Bilsborrow was the only one there. She took this out of her grip, and told mother to sign it. That is all there was to it."

We are not impressed as the trial court was with the truthfulness of the defendant's testimony. His story is improbable. It is quite unlikely that after the lapse of five years he could so clearly remember that certain questions were not asked of his mother when her application was taken. And it is quite significant that these matters of which he has such a distinct remembrance are vitally important to his interests in this case. He clearly remembers that these questions were not asked of his mother and the answers now in the application were not in when she signed it. It is undisputed that his mother made an appointment with the agent to come to her house in the afternoon of December 14, 1926. She wanted insurance. She set the time when the agent should come and take her application. The agent came, and when the application was more than half completed, the defendant would have us believe that his mother signed it and went away, leaving the agent to fill in answers containing information which she could get from no other source than from the applicant. It is more probable, as the agent claims, that the applica-

tion was completed in Mrs. Schempf's presence and signed by her after all the questions had been answered; that they then went to the medical examiner's office where the applicant again looked over the application and pronounced it correct. This is confirmed by the medical examiner, who says in his report that the applicant had read the questions and answers and assented to them as correct. The evidence does not justify the finding of the trial court that the answers in question were not actually given as claimed by the plaintiff.

We also think there is no merit to the claim that the policy was incontestable after the expiration of two years from the date of issuance.

The statute, 3 Comp. Laws 1929, § 12427, requires an incontestable clause in insurance contracts, but this provision of the statute does not apply to fraternal mutual benefit associations such as the plaintiff. They are exempt under 3 Comp. Laws 1929, § 12479.

The incontestable clause in this policy is there by agreement of the parties, and not by requirement of the statute. It reads:

"Incontestability—This certificate shall be incontestable after two years from date of membership, except for the nonpayment of premiums or obvious fraud in the application for insurance, or for violation of the constitution and by-laws."

The evidence of fraud in the application excepts this policy from the incontestability clause.

The decree of the trial court is reversed. A decree will be entered here in accordance with this opinion. The plaintiff will have costs.

CLARK, C. J., and POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.